prison disciplinary rule which prohibits inmates from the unauthorized use of a controlled substance after two urinalysis tests yielded positive results for the presence of opiates. Petitioner commenced this CPLR article 78 proceeding challenging the determination of his guilt.

As the determination is not supported by substantial evidence it must be annulled. While positive results of urinalysis tests can be sufficient to support a finding of guilt to the instant charge, an adequate foundation for the introduction of the test results must be provided (see, 7 NYCRR 1020.5 [a] [1]; Matter of Davis v McClellan, 202 AD2d 770, 770-771). Here, the urinalysis request form fails to set forth the chain of custody of petitioner's urine sample and indicates only when the specimen was destroyed. Moreover, there is a discrepancy between the retest number indicated on the request for urinalysis form as compared to the urinalysis log. Under these circumstances, we find that there is an insufficient foundation for the introduction of the urinalysis test results. In view of the foregoing, we need not address petitioner's remaining contentions.

Mikoll, J. P., Yesawich Jr., Peters and Graffeo, JJ., concur. Adjudged that the determination is annulled, without costs, petition granted and respondent is directed to expunge all references to this matter from petitioner's institutional record.

■ In the Matter of the Claim of CRAIG A. COHEN, Respondent. PARTYMASTER PRODUCTIONS, INC., Appellant; COMMISSIONER OF LABOR, Respondent. (And Another Related Claim.) [690 NYS2d 280] —Appeals from two decisions of the Unemployment Insurance Appeal Board, filed November 14, 1997, which, inter alia, assessed Partymaster Productions, Inc. for additional unemployment insurance contributions on remuneration paid to claimant and those similarly situated.

Partymaster Productions, Inc. operates a business providing disc jockeys and other entertainers for nightclubs and catered functions. When claimant, a disc jockey, approached Partymaster for an assignment, Partymaster's president, Perry Gips, met with claimant and listened to an audiotape of his work. Gips would not discuss salary with claimant until "after [he] saw what kind of talent [claimant] had". Claimant thereafter received a steady assignment to work weekend nights and occasional week nights at a hotel nightclub. The nightclub was billed for claimant's services by Partymaster and Partymaster would then pay claimant. Gips testified that he would speak with the nightclub's manager once a week to check and see how claimant "was doing".

Upon review of the record, we find that there is substantial

evidence to support the decisions of the Unemployment Insurance Appeal Board that Partymaster exercised sufficient control over the services performed by claimant and those performing similar services to establish their status as employees (*see, Matter of Hacic [Hudacs]*, 193 AD2d 982; *Matter of Wolf [Upstate Music & Promotion—Hartnett]*, 178 AD2d 700, 701), despite the existence of other evidence in the record that could support a contrary result (*see, Matter of Captain Kishka [Hartnett]*, 158 AD2d 814, 816, *lv denied* 76 NY2d 708). Partymaster's remaining contentions have been considered and rejected as unpersuasive.

Cardona, P. J., Mercure, Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the decisions are affirmed, without costs.

■ In the Matter of the Claim of SONG LEE, Respondent. WORLD BOOK, INC., Appellant; COMMISSIONER OF LABOR, Respondent. (And Another Related Claim.) [688 NYS2d 791] —Appeals from two decisions of the Unemployment Insurance Appeal Board, filed November 14, 1997, which, *inter alia*, assessed World Book, Inc. for additional unemployment insurance contributions on remuneration paid to claimant and those similarly situated.

World Book, Inc. operates a business engaged in publishing encyclopedias and other educational books. It is undisputed that claimant was hired as a salesperson by World Book and worked in that capacity as an admitted employee through December 31, 1995. World Book determined, however, that, effective January 1, 1996, it would no longer treat its sales staff as employees, but as independent contractors. Branch managers such as claimant became regional directors and were required to form their own businesses. In lieu of a salary, branch managers began receiving a flat percentage of money which they were expected to use to pay themselves and hire other staff. Branch managers were required to purchase products from World Book and the purchase price would be deducted from commissions due. Other than the change in the form of compensation and distribution of products, claimant's job duties did not substantially change. Claimant continued to sell World Book's products at prices set by World Book and he was not allowed to sell competitors' products. All advertising had to be approved by World Book and claimant's attendance at certain meetings was required. Claimant continued to be assigned a specific territory and was given sales leads by World Book.

World Book challenges two decisions of the Unemployment